16-CV-3345 (VEC)

IN THE UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

JENNY RAMGOOLIE,

Plaintiff-Apellant,

vs.

ANDY RAMGOOLIE,

Defendant-Appellee,

Respondent

On Appeal from the United States District Court for the Southern District of New York

22-1409

REPLY FOR PLAINTIFF-APPELLANT

Jenny Ramgoolie

In Pro Se

9402 Calwoodcie Spring TX 77379

646-377-6792

jramgoolie@gmail.com

1

## **TABLE OF CONTENTS**

Argument............................................................................... 5

Conclusion ........................................................................... 15

Certificate of Compliance..................................................... 16

Certificate of Service............................................................ ~~16~~

Page(s)

Cases

*Broadway v. City of Montgomery, Alabama*,
530 F.2d 657 [*590]..................................................................................................6

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) ...................................................................................12

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)............................................6

*Cohn v Borchard Affiliations*,
25 NY2d 237 ...........................................................................................................10

*Conforte v. Commissioner*,
692 F.2d 587 (9th Cir. 1982) ....................................................................................6

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)................................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)................................................................................................11

*Davis v. N.Y. City Hous. Auth.*,
166 F.3d 432 (2d Cir. 1999)....................................................................................12

*Degen v. United States*,
517 U.S. 820, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996)...................................5, 6

*Goya*,
275 F.3d....................................................................................................................5

*Matter of Grisi v,*
*hainswit*, 11 ..........................................................................................................10

*Headley v Noto*,
22 NY2d 1 ..............................................................................................................10

*Henry v. Champlain Enters.*,
445 F.3d 610 (2d Cir. 2006)....................................................................................13

*Icicle Seafoods, Inc. v. Worthington*,
475 U.S. 709 (1986)................................................................................................11

*Keach*,
419 F.3d..................................................................................................................12

*Kupperstein v. Schall (In re Kupperstein)*,
943 F.3d 12 (1st Cir. 2019) ............................................................................6, 7, 8

Local Union No. 40,
88 F. Supp. 3d ..........................................................................................................7

*Lucente v. IBM*,
310 F.3d 243 (2d Cir. 2002).....................................................................................5

*Nishimatsu Construction Co., Ltd. v. Houston National Bank,*
  515 F.2d 1200 (5th Cir.1975) .............................................................. 10
*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,*
  7 F.3d 1091 (2d Cir. 1993) ................................................................... 5
*Shay,*
  100 F.3d ............................................................................................. 12
United States v. Pole No.,
  852 F.2d 636 (1st Cir. 1988) ................................................................. 6
Walsh,
  221 F.3d .............................................................................................. 5
*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.,*
  946 F.2d 1003 (2d Cir. 1991) ............................................................... 5

Rules

Rule 702 of the Federal Rules of Evi ...................................................... 11
Fed. R. App. P. 32(a)(5) ........................................................................... 2
Fed. R. App. P. 32(a)(6) ........................................................................... 2
Fed. R. App. P. 32(a)(7)(B) ...................................................................... 2
Fed. R. App. P. 32(f) ................................................................................ 2
Fed. R. App. P. 32(g)(1) ........................................................................... 2
Fed. R. Civ. P. 37(a)(5)(A) ....................................................................... 9
Fed. R. Civ. P. 52(a) .............................................................................. 12

For the reasons set forth in the Appellant's opening brief and in this reply brief, this Court should remand the case and instruct the district court to hold an evidentiary hearing to determine whether the Court correctly considered the accountant's report in the valuation of the company and whether the Court correctly applied the law on reliance damages.

# ARGUMENT

A. The Standard of Review is De Novo

We review the district court's grant of summary judgment on this contract dispute *de novo* and "employ[] the same tests as those applied at the district court." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993). "Although the amount of recoverable damages is a question of fact, the measure of damages upon which the factual computation is based is a question of law." *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (internal quotations omitted). Therefore, our review of the district court's damages' valuation methodology is plenary. Lucente v. IBM, 310 F.3d 243, 261 (2d Cir. 2002)

B. Defendant should not be allowed to raise objections to this appeal applying the disentitlement doctrine.

Federal courts have the discretion to dismiss an appeal without hearing the merits "if the party seeking relief is a fugitive while the matter is pending." Degen v. United States, 517 U.S. 820, 824, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996). We've done it "even where the appeal [was] taken from a civil judgment." Goya, 275 F.3d at 128-29 (citing Walsh, 221 F.3d at 214). This so-called "fugitive disentitlement doctrine"is one of many tools — like the power to dismiss a case for failure to

5

prosecute, to punish contempt of court, or to vacate judgments gained by fraud — that spring from federal courts' "inherent authority to protect their proceedings and judgments." Degen, 517 U.S. at 823 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (reviewing federal courts' "implied powers" to "impose . . . submission to their lawful mandates" and sanction "conduct which abuses the judicial process")). It targets litigants who try to "reap the benefit of the judicial process without subjecting [themselves] to an adverse determination." United States v. Pole No. 3172, 852 F.2d 636, 643 (1st Cir. 1988). Kupperstein v. Schall (In re Kupperstein), 943 F.3d 12, 20 (1st Cir. 2019)

The disentitlement doctrine should be applicable here. Defendant has been declared in default in the trial court owing to his violations of discovery process and can therefore be likened as a fugitive. In the above case law, the Courts have applied disentitlement doctrine in civil cases as well. Although *Molinaro* involved an appeal from a criminal conviction, there is no indication in the Court's decision that the rule stated has any less vitality in civil cases. To the contrary, as the Service points out, and as other courts have recognized, the rule should apply with greater force in civil cases where an individual's liberty is not at stake. *Cf. Broadway v. City of Montgomery, Alabama*, 530 F.2d 657 [*590] (5th Cir. 1976) [**8] (court refused to hear an appeal from a fugitive who sought damages and injunctive relief from an

allegedly illegal state wire tap) Conforte v. Commissioner, 692 F.2d 587, 589-90 (9th Cir. 1982)

Thus, applying the disentitlement doctrine, this Court should not give credence to any opposition raised by Defendant in this appeal.

Throughout the case, Defendant has been arrogantly displaying open defiance to discovery process. It has consistently stonewalled meaningful compliance to the discovery process. This explains why Plaintiff is finding it difficult to adduce the documents which were all within Defendant's access. The Court gave a scathing remark at how Defendant abused the process and concluding that the harshest penalty of default should be meted. Relevant portions of the Court's ruling is reproduced as follows:

> "Consistent with the purposes of Rule 37, one of which is to ensure that a party will not benefit from its own discovery abuses, see Local Union No. 40, 88 F. Supp. 3d at 265, the Court has considered whether a sanction less severe than default judgment would be efficacious. Because of Defendant's noncompliance, Plaintiff has been unable to obtain relevant information regarding her alleged damages—the entire point of having damages discovery in the first place. Defendant should not be permitted to benefit from his own continued recalcitrance by undercutting Plaintiff's ability to prove her case, her ability to do so being dependent on the very evidence he has withheld. The history of Defendant's intransigence during discovery in this case further confirms that a sanction other than a default judgment would not be effective. On September 14, 2017, Plaintiff filed a motion to compel Defendant to produce various business records from AANDCO. See Dkt. 89. During a conference on October 4, 2017, Judge Netburn determined that Defendant had control over these records and concluded that they were relevant to Plaintiff's claims. Dkt. 100 (tr. of Oct. 4, 2017 discovery conference) at

4, 6, 11. Accordingly, in an order issued the same day, the Court directed Defendant to produce the requested documents no later than November 1, 2017. Id. at 14; see also Dkt. 93 ("As discussed at the discovery conference held on October 4, 2017, Defendant is ORDERED to produce the relevant documents related to AANDCO Health Care Ltd. on a rolling basis and no later than November 1, 2017."). Defendant did not object to the Magistrate Judge's order or ask her to reconsider her finding that Defendant had control over the AANDCO records. Defendant failed to produce any documents by the November 1 deadline. See Dkt. 95. Therefore, on November 8, 2017, Plaintiff asked the Court to sanction Defendant for his failure to comply with the Court's October 4 order. Id. at 1-2. On November 14, the Magistrate Judge held a conference to discuss the parties' dispute. See Dkt. 97. Regarding the AANDCO materials, Defendant stated that he had been unable to obtain any documents and that, although he believed that Plaintiff's requests for those documents were irrelevant, he had not articulated this objection in a form that was compliant with the Federal Rules. Dkt. 102 (tr. of Nov. 14, 2017 conference) at 5-6, 23-24. To avoid ruling in the abstract, the Magistrate Judge ordered Defendant to serve completed discovery objections no later than November 27, 2017. Id. at 24-25. Judge Netburn also stated that Plaintiff could file a motion to compel if Defendant's objections were inadequate. Id. On November 27, 2017, Plaintiff filed—for a second time—a motion to compel Defendant to produce the AANDCO records. See Dkt. 104. In an order dated December 18, 2017, Judge Netburn concluded that Defendant had disobeyed her October 4 order by failing to produce documents in response to Plaintiff's discovery requests. See Dkt. 108 at 6-7; see also Dkt. 93 (Oct. 4, 2017 order). Judge Netburn authorized Plaintiff to file an application for appropriate relief in connection with her motion for summary judgment. See Dkt. 108 at 7. Plaintiff did so, asking the Court to sanction Defendant with a mandatory adverse-inference jury instruction. See Dkt. 118 (Mem. in Supp. of MSJ) at 20-25. On August 3, 2018, the Magistrate Judge issued a Report and Recommendation recommending that the parties' motions for summary judgment be denied but that Plaintiff's motions for sanctions against Defendant be granted. See Dkt. 139 at 24-27. Judge Netburn recommended denying Plaintiff's request for a mandatory adverse-inference instruction in favor of a discretionary adverse-inference instruction, concluding that the latter was more commensurate with Defendant's conduct. Id. at 26-27. This Court ultimately adopted that recommendation, although the undersigned opted to craft the precise

> language of the instruction at trial. See Dkt. 149 at 20. Thus, Defendant has already been severely sanctioned for failing to comply with the Court's discovery orders. Yet despite its severity, the Court's prior sanction did not deter Defendant from again failing to produce requested documents when ordered to do so by the Court. This pattern of noncompliance evidences a deliberate strategy of denying Plaintiff access to the documents necessary to prove her case and, just as vitally, her damages. An even more robust sanction is now necessary to address—and hopefully break—Defendant's continued intransigence.
>
> For the foregoing reasons, Plaintiff's motion for sanctions is granted, and the Court enters a default judgment against Defendant pursuant to Rule 37(b)(2)(A)(vi). In addition, because Defendant's oppositions to Plaintiff's November 26, 2018 motion to compel and this sanctions motion were not substantially justified, Plaintiff is awarded her attorney's fees and costs for making both motions. See Fed. R. Civ. P. 37(a)(5)(A); id. 37(b)(2)(C). (pp 11-13, Order dated September 10, 2019)

It is also worth mentioning that Hon. Netburn submitted the following recommendation in her Report and Recommendation dated August 3, 2018 to the Motion for Summary Judgment.

> In addition, I recommend instructing the jury at trial that it may draw an adverse inference based on Defendant's failure to produce certain documents during discovery. Therefore, I recommend that the Court give the following jury instruction at trial: Before trial, the Court ruled that the defendant had failed to produce records that were in his possession and control regarding Aandco's issuance of shares to Kevin Ramgoolie, Jeremy Ramgoolie, and Annie Ramgoolie and Aandco's subsequent transfer of its assets to KDR. If you find that these records would have been material in deciding facts in dispute in this case, then you are permitted, but not required, to infer that this evidence would have been unfavorable to the defendant.

Defendant's abominable defiance of the court processes should not go unpunished. We have recently reaffirmed the principle "that courts have the inherent power, and indeed responsibility, so essential to the proper administration of justice, to control their calendars and to supervise the course of litigation before them." (*Matter of Grisi v Shainswit*, 119 AD2d 418, 421; *see also, Headley v Noto*, 22 NY2d 1, 4; *Cohn v Borchard Affiliations*, 25 NY2d 237, 249-250.) Thus, pursuant to the inherent power and wide latitude given to the Courts in managing the disposition of its caseload and applying the disentitlement doctrine, this Court should not ascribe any weight to any opposition raised by Defendant.

C. The declaration of default further bars Defendant from meaningfully participating in the proceedings

As mentioned above, Defendant was meted with the harshest penalty of default because of flagrantly perpetrating a pattern of discovery abuse which stonewalled disclosure of relevant documents. The order of default has the effect which precludes the defendant from making any further defense in the case so far as liability is concerned. The effect of a default judgment is that the defendant ". . . admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus

established." *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir.1975).

Thus, with the declaration of default, Defendant cannot now interpose any meaningful objections and/or present evidence to the contrary. His own intransigence to the court's rules and processes should not benefit him at all by allowing him to propound opposition to the appeal raised by Plaintiff.

### D. The Court Committed an Error when It Failed to Consider the Methodology of the Accountant in Valuating the Company

The accountant's valuation report adopted a methodology which produced a reliable indicator of the fair market value of AANDCO, thus, proving damages with reasonable certainty.

Rule 702 of the Federal Rules of Evidence requires that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Rule 702 assigns district [*40] judges "a gatekeeping role. " Id. at 597; see also id. at 600 (Rehnquist, C.J., concurring and dissenting) ("I do not doubt that Rule 702 confides to the judge some gatekeeping responsibility . . . ."). If a district court ignores or misconstrues the governing law--as by, for example, failing to follow Rule 702's criteria of reliability and relevance, as set forth by

this Court in Daubert--then it has committed an error of law, subject to plenary review and reversal on appeal. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990); Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). But in the ordinary case, when as here the prescribed legal rule has been applied, the standard of appellate review of evidentiary rulings is deferential, reflecting a district court's "wide discretion."

Courts are not required to provide lengthy analyses in support of their damages findings but they are required under Fed. R. Civ. P. 52(a) to "adequately explain the subsidiary facts and methodology underlying the ultimate finding." *Davis v. N.Y. City Hous. Auth.*, 166 F.3d 432, 436 (2d Cir. 1999). The district court's determination [**29] that CommutAir was valued at $ 145 million at the time of the ESOP transaction was not accompanied by any explanation of the facts or methodology used to reach this figure. In the absence of a specific explanation for the district court's findings, we are unable to determine whether this valuation, and the resulting damages award, are justified. As we noted above, without knowing which errors led to the purported overvaluation of CommutAir, we cannot determine whether U.S. Trust fulfilled its obligation to "'question the methods and assumptions that do not make sense.'" *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 301 (5th Cir. 2000) (quoting *Shay*, 100 F.3d at 1490). Only after the court has identified incorrect assumptions or flaws in HLHZ's valuation methodology will it

become possible to determine whether U.S. Trust can "establish that the ESOP paid no more than fair market value for the asset, and that the fair market value was determined in good faith by the fiduciary." *Keach*, 419 F.3d at 636. We vacate both the district court's finding that U.S. Trust failed to qualify for the § 408 exception and its damages award so that the court may specify how HLHZ erred in its valuation of CommutAir and why a prudent fiduciary would have detected the errors. Assuming that the district court finds defects in the valuation report that a prudent fiduciary would have detected, it should then assess damages and set forth its specific findings. *Henry v. Champlain Enters.*, 445 F.3d 610, 622 (2d Cir. 2006)

Here, the District Court simply washed over the methodology of the accountant in valuating the company without stating which part in her valuation is erroneous. In the absence of specific explanation as to how the District Court refused to ascribe probative weight to the accountant's valuation, the case should be remanded with instruction to consider the accountant's valuation report of the company so as to determine the correct 50-50 sharing of Plaintiff and Defendant pursuant to their agreement.

## CONCLUSION

For the foregoing reasons, the Court should modify the award of damages from $398,380 TTD to USD13,409,105 representing the 50% interest in Aandco and KDR or in the alternative, remand the case to the District Court with instruction to ascribe probative value to the Accountant's valuation of the company.

March 16th, 2023                                                     JENNY RAMGOOLIE /s/ pro-se

15

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by Circuit Rule 32.1(a)(4), because this Brief contains 3090 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f). I further certify that this Reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the Brief has been prepared in New Times Romas, 14-point font.

Date: March 16, 2023

Respectfully submitted,

Jenny Ramgoolie /s/ pro-se

16